UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ALZAL CORP.,                                                :
                                Plaintiff,                    :
                                          :
        -against-                              :          ***AMENDED*** REPORT AND
                                          :          RECOMMENDATION[1]
KILLER CARZ LLC, KILLER CARZ 2 LLC, and                     :
MICHAEL SANKAR,                                             :          15-CV-4968 (RPK)(MMH)
                                          :
                                Defendants.                   :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

        In this diversity action, Plaintiff Alzal Corporation ("Alzal") sued Killer Carz LLC

("Carz") and Killer Carz 2 LLC ("Carz 2") (collectively, the "Corporate Defendants"), as well

as Michael Sankar and Lambros Motitis, in state court, alleging common law breach of

contract, unjust enrichment, and fraud claims. (*See generally* Compl., ECF No. 1-2.)[2] After

Defendants removed this action to federal court, Alzal eventually settled its claims with

Motitis. Before the Court is Alzal's motion for default judgment against the Corporate

Defendants and Sankar pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil

Rule 55.2. (*See generally* Mot., ECF No. 136.)[3] The Honorable Rachel P. Kovner referred

the motion for report and recommendation.

---

[1] This Amended Report and Recommendation supersedes the Report and Recommendation issued
on March 29, 2024 (ECF No. 156), which is **vacated and withdrawn** in full.

[2] All citations to documents filed on ECF are to the ECF document number and pagination in the
ECF header unless otherwise noted. Citations to the Local Civil Rules are to the Rules in effect
before July 1, 2024.

[3] The Motion includes a notice of motion (Mot., ECF No. 136); the declaration of Joshua S.
Androphy, Esq. (Androphy Decl., ECF No. 137), that declaration's three exhibits (Androphy Decl.
Ex. ___, ECF Nos. 137-1 to 137-3); the declaration of Ilya Igdalev (Igdalev Decl., ECF No. 138);
its sole exhibit (Igdalev Decl. Ex. A, ECF No. 138-1); a memorandum of law (Mem., ECF No.
139); and a Certificate of Service (ECF No. 140). Alzal also submitted supplemental briefing

For the reasons set forth below, the Court respectfully recommends that: (1) Alzal's motion for default judgment should be **granted** for the Corporate Defendants and **denied** for Sankar, and (2) Alzal should be awarded damages as set forth herein.

## I.    BACKGROUND

### A.    Factual Allegations

The following facts are taken from the Complaint and documents incorporated by reference into the Complaint, and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Alzal is an authorized motor vehicle dealer based in New York.  (Compl., ECF No. 1-2 ¶¶ 1, 11; Notice of Removal, ECF No. 1 ¶ 5.)  The Corporate Defendants are limited liability companies organized pursuant to the laws of New Jersey with a principal place of business in New Jersey.  (Compl., ECF No. 1-2 ¶¶ 2–3; Notice of Removal, ECF No. 1 ¶ 6.)  Sankar and Motitis are members of Carz and Carz 2, respectively; at the time of removal, both resided and were domiciled in New Jersey.  (Notice of Removal, ECF No. 1 ¶ 6.)

The primary dispute between these parties relates to the purchase of a Range Rover vehicle ("the Vehicle").  On September 18, 2013, Defendants entered into a written agreement in which Alzal agreed to sell the Vehicle to Defendants for $39,900.  (Compl., ECF No. 1-2 ¶¶ 12, 14, 23, 32; Compl. Ex. A, ECF No. 1-2 at 14.)  The purchase price was due no later than

---

related to attorneys' fees, including a letter brief (Supp. Mot., ECF No. 152) and its two exhibits (Supp. Mot. Exs. A–B, ECF No. 152-1 to 152-2).  Although the Motion does not include a proposed default judgment order, *see* Loc. Civ. R. 55.2(b)(3), the relief sought is sufficiently stated in the Motion.  *Am. Eur. Ins. Co. v. Tri State Plumbing & Heating Inc.*, No. 21-CV-725 (MKB)(PK), 2022 WL 4641628, at *5 (E.D.N.Y. Sept. 15, 2022), *adopted by* 2022 WL 4662266 (E.D.N.Y. Sept. 30, 2022).

30 days from the contract date.  (Compl. Ex. A, ECF No. 1-2 at 14 ¶ 1.)  Defendants agreed to pay Alzal an additional $15,000 as liquidated damages if they did not timely pay the full balance due.  (*Id.* at 14 ¶ 2.)  Defendants also agreed to pay Alzal's attorneys' fees if Alzal had to file suit to enforce the terms of the contract.  (*Id.* at 15 ¶ 6.)  In the same written agreement, Sankar agreed to store and make available for sale on Alzal's behalf two large tire mounting and changing machines that Alzal had purchased for $11,000.  (*Id.* at 14 ¶ 3.)

Defendants paid Alzal $10,000 via cashier's check towards the agreed-upon purchase price.  (Compl., ECF No. 1-2 ¶¶ 16, 25, 34.)  For the remaining balance, Defendants issued Alzal a bank check for $29,900, drawn from Carz's account, which was returned due to insufficient funds.  (*Id.* ¶¶ 17–18, 26–27, 35–36.)  Defendants failed to pay, however, despite Alzal's numerous demands and attempts to collect payment.  (*Id.* ¶¶ 19–20, 28–29, 37–38.)  Because of the foregoing, Alzal has suffered $44,900 in damages plus interest.  (*Id.* ¶¶ 21, 30, 39.)

### B.    Procedural History

Alzal initiated this action in state court in or about July 2015, alleging: (1) breach of contract claims against all Defendants for failure to pay the balance due for the Vehicle (Counts One through Four); (2) unjust enrichment claims against Sankar and Motitis for selling the tire mounting machines and not providing the proceeds to Alzal (Counts Five and Six); (3) fraud claims against Motitis related to the sale of another vehicle (Counts Seven and Eight); (4) attorneys' fees due for all Defendants' breach of contract (Count Nine); and seeking damages.  (*See generally* Compl., ECF No. 1-2.)  Defendants, through counsel, removed the action to this court on August 25, 2015 on the basis of diversity jurisdiction pursuant to 28

U.S.C. § 1332.  (*See* Notice of Removal, ECF No. 1.)[4]  All Defendants answered on October 1, 2015, asserting various affirmative defenses.  (Answer, ECF No. 8.)  After unsuccessful attempts at settlement, the parties engaged in discovery.  (*See* Jan. 21, 2016 Min. Entry; July 6, 2016 Min. Entry; Dec. 5, 2016 Min. Entry.)

On October 4, 2017, defense counsel moved to withdraw, citing Defendants' failure to communicate and willingness to default in this action.  (ECF No. 31.)  The Court granted the motion and gave the Corporate Defendants sixty days to obtain counsel and for Sankar to file a *pro se* notice of appearance.  (Oct. 12, 2017 Order, ECF No. 33.)  Since then, no attorney has appeared on the Corporate Defendants' behalf.  Sankar initially continued to appear *pro se*.  (*See, e.g.*, Mar. 15, 2018 Order, ECF No. 47 at 2; June 19, 2018 Min. Entry, ECF No. 54; July 25, 2018 Min. Entry, ECF No. 56; Oct. 31, 2018 Min. Entry.)  Eventually Sankar stopped appearing before the Court and did not advise the Court of his mailing address.  (*See* Jan. 29, 2019 Scheduling Order, ECF No. 67; ECF No. 105 (returned mail undeliverable to Sankar's mailing address); Jan. 13, 2021 Min. Entry.)  After Sankar's continued absence, the Court granted leave for Alzal to request a certificate of default against Sankar.  (Dec. 10, 2021 Min. Entry.)[5]

On August 25, 2022, Alzal moved for entry of default against the Corporate Defendants and Sankar.  (ECF No. 131.)  The Clerk of Court entered a certificate of default as to those Defendants on September 1, 2022.  (ECF No. 132.)  Alzal filed the instant motion for default

---

[4] The Court later determined that there is complete diversity between Alzal and Defendants.  (ECF No. 104.)

[5] Alzal settled its claims with Motitis and the Court dismissed Motitis from the case.  (Aug. 16, 2022 Order.)  The Court later granted Alzal's motion for judgment based on Motitis's breach of the settlement agreement. (Apr. 5, 2023 Order; Judgmt., ECF No. 150.)

judgment on October 4, 2022.  (Mot. ECF No. 136.)  Judge Kovner referred the motion for report and recommendation.  (Oct. 5, 2022 Order Referring Mot.)  At a motion hearing on March 28, 2024, Alzal's counsel and Motitis appeared; Sankar did not.[6]  (Mar. 28, 2024 Min. Entry; *see generally* Hr'g Tr., ECF No. 156 ("Tr.").)  The Court also requested, and Alzal provided, supplemental briefing regarding attorneys' fees.  (*See generally* Supp. Mot., ECF No. 152.)

## II.   <u>DISCUSSION</u>

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc*., No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages;

---

[6] Per the Court's directives, Alzal's counsel mailed and emailed a copy of the Court's Scheduling Order to Sankar and Motitis.  (*See* Mar. 19, 2024 Order; ECF Nos. 153–154.)  Though Motitis appeared at the hearing, he cannot appear as representative for Carz 2, a limited liability company, because he is not an attorney.  *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms, a limited liability company also may appear in federal court only through a licensed attorney.") (citation omitted).

(C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

As discussed below, default judgment against Sankar is not appropriate because Alzal fails to establish Sankar's military status. The Corporate Defendants, however, are eligible for entry of default judgment because of their continued nonappearance in this action and are liable for breach of contract. Further, Alzal is entitled to damages for the Corporate Defendants' breach, including attorneys' fees, costs, and interest.

### A. Compliance with the Servicemembers Civil Relief Act

Pursuant to the Servicemembers Civil Relief Act ("SCRA"), "[i]n a default judgment action, a plaintiff is required to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022) (citing 50 U.S.C. § 3931(b)(1)), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023); *see also Citibank, N.A. v. McGarvey*, 765 N.Y.S.2d 163, 167 (Civ. Ct. 2003) ("The federal and state Soldiers' and Sailors' Civil Relief Acts . . . require that, before a default

judgment can be entered against a natural person who has otherwise not answered or appeared in an action or proceeding, the party seeking to enter the default judgment must submit an affidavit to the Court showing that the defaulting party is neither in active military service nor dependent on anyone else who is.") (citing 50 U.S.C. App. §§ 520(1) & 536 [now codified at 50 U.S.C. § 3931]  & N.Y. Mil. Law §§ 303(1), 306 (2003)); *LW Holdco V LLC v. Puls*, 192 N.Y.S.3d 481 (N.Y. Sup. Ct. 2023) (tbl.).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of New Jersey v. Est. of Locker*, No. 12-CV-882 (ENV)(RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).  Failure to comply with these requirements is sufficient to deny default judgment.  *Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB)(JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *adopted by* 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).

Here, Alzal does not establish its compliance with the SCRA.  *First*, Alzal fails to establish that Sankar was not a member of the armed forces at the time he was served with process.  Nothing in the removal documents or the motion papers suggests that a process server or any other entity conducted research on Sankar's military status before serving the summons and Complaint.  *Second*, Alzal offers no facts to show any of its own efforts to determine whether Sankar is a servicemember.  The affidavits submitted with the instant motion do not include any averments regarding Sankar's servicemember status or efforts to investigate same.

At the motion hearing, counsel argued that the declaration in support of Alzal's application for the Clerk's entry of default addressed Sankar's military service.  (Tr. 12:19–13:1; 13:18–24.) That declaration states, "Michael Sankar is not an infant or incompetent, nor is Sankar presently in the military service of the United States as appears from facts in this litigation and the knowledge of the parties."  (Androphy Decl., ECF No. 131-1 ¶ 10.)  But the declaration "fails to offer facts to support this latter conclusory statement or show that any investigation into [Sankar's] military status had been conducted since attempting to serve process" in this case.  *Pinela Jurado v. Sabor Hispano, Inc.*, No. 20-CV-1104 (RPK)(VMS), 2021 WL 11690645, at *7 (E.D.N.Y. Aug. 5, 2021).[7]  On this record, the Court cannot find compliance with the SCRA.  *See Lopez*, 2022 WL 18809176, at *5.

Because Alzal fails to demonstrate compliance with the SCRA, the Court respectfully recommends that the motion for default judgment against Sankar should be denied as to the claims against him—specifically, for breach of contract as alleged in Count Three, for unjust enrichment as alleged in Count Five, and for attorneys' fees as alleged in Count Nine.  The Court will therefore address the instant motion against the Corporate Defendants only.

## B.    Default Judgment Factors

Courts apply the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4

---

[7] "Plaintiff's burden in this regard is not a heavy one, as the Department of Defense maintains a Servicemembers Civil Relief Act website for the purposes of, among other things, determining whether an individual is on active duty."  *Pinela Jurado*, 2021 WL 11690645, at *7; *see also Morales*, 2023 WL 375647, at *5 n.3 ("It is possible to obtain a report certifying active-duty military status through the Servicemembers Civil Relief Act website."); https://scra.dmdc.osd.mil/scra/#/home (website for free requests).

(E.D.N.Y. Aug. 14, 2020). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

First, as for the first factor of willfulness, "even if a defendant files an answer, a defendant's continued failure to respond to court orders to obtain new counsel evinces willful default." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *5 (E.D.N.Y. Mar. 24, 2022) (collecting cases). After the Court relieved counsel in October 2017, the Court twice warned the Corporate Defendants that they could not proceed *pro se* because limited liability companies must secure legal counsel to defend an action. (ECF Nos. 32, 47.) "Furthermore, Defendants' counsel withdrew in part due to the clients' failure to communicate regarding this case. This repeated conduct shows a willful and deliberate disregard for this Court's orders, which militates in favor of a default judgment." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123–24 (E.D.N.Y. 2011) (collecting cases).

Second, as to whether there is a meritorious defense, "a defense may be meritorious if it is more than a conclusory denial and if it is articulated with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *Brito*, 2022 WL 875099, at *5 (cleaned up). "However, a defendant must 'present evidence of facts that if proven at trial, would constitute a complete defense.'" *Rodriguez*, 784 F. Supp. 2d at 124 (quoting *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998)). The Corporate Defendants' answer includes possibly viable

affirmative defenses, including that Alzal fails to state a claim upon which relief can be granted and that Alzal's claims are barred in whole or in part because of potential set-offs equal or greater to amounts allegedly owed to Alzal. (Answer, ECF No. 8 at 6 & 9 (first & twenty-fifth defenses).) Despite these assertions, while the Corporate Defendants participated in some discovery before counsel's withdrawal, they abandoned the litigation by failing to obtain new counsel. (Aug. 4, 2021 Min. Entry; Sept. 28, 2021 Min. Entry & Order.) Therefore, the Court cannot determine whether the Corporate Defendants have meritorious defenses, which warrants default against them.

Third, Alzal will be prejudiced if the motion for default judgment is denied because it has "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017). In other words, because the Corporate Defendants abandoned the case, "without the entry of a default judgment, [Alzal] would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (cleaned up).

Based on the foregoing, entry of default judgment is permissible. The Court now turns to the Corporate Defendants' liability for breach of contract.

## C.    Liability

Counts One and Two allege breach of contract against the Corporate Defendants related to the sale of the Vehicle. (Compl., ECF No. 1-2 ¶¶ 13–39.) "To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)); *AT&T Corp. v. Atos IT Sols. &*

*Servs., Inc.*, No. 23-CV-1395 (LJL), 2023 WL 8878935, at *8 (S.D.N.Y. Dec. 22, 2023) ("A sufficient pleading for breach of contract must at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.") (cleaned up).[8]

The well-pleaded allegations in the Complaint clearly establish formation, the Corporate Defendants' breach, and damages. *First*, as to formation, the Complaint alleges that Alzal entered into a written contract in which it agreed to transfer ownership of the Vehicle to the Corporate Defendants in exchange for payment of $39,900 no later than 30 days from the contract date, and with a $15,000 penalty for late payment. (Compl., ECF No. 1-2 ¶¶ 12, 14–15, 23–24.) The Complaint attaches a "Contract" memorializing these terms; Sankar and Motitis signed individually and on behalf of Carz and Carz 2, respectively, while Ilya Igdalev signed as Alzal's representative. (Compl. Ex. A, ECF No. 1-2 at 15.) This is sufficient to establish the existence of a contract. *Billybey Marina Servs., LLC v. Affs. Afloat, Inc.*, No. 14-CV-6722 (SJ)(JO), 2016 WL 1266608, at *2 (E.D.N.Y. Mar. 11, 2016), *adopted by* 2016 WL 1271479 (E.D.N.Y. Mar. 30, 2016). *Second*, the Complaint alleges that the Corporate Defendants failed to perform their obligations under the contract because they only paid $10,000 of the agreed purchase price, their second payment check bounced, and they have not paid the balance due in response to Alzal's demands. (Compl., ECF No. 1-2 ¶¶ 12, 14, 16, 18, 23, 25, 27; *see also* Compl. Ex. A, ECF No. 1-2 at 14.) *Third*, the Complaint alleges that Alzal

---

[8] The parties agreed that any dispute related to the contract would be governed by New York law. (Compl. Ex. A, ECF No. 1-2 at 14 ¶ 5.)

suffered damages as a result of the Corporate Defendants' failure to pay.  (Compl., ECF No. 1-2 ¶¶ 21, 30.)

Alzal's allegations of performance present a closer call.  The Complaint alleges that after executing the contract with Alzal on September 18, 2013, "upon information and belief, Defendant sold and was paid for the subject Range Rover vehicle."  (Compl., ECF No. 1-2 ¶¶ 14, 16 (Carz); *id.* ¶¶ 23, 25 (Carz 2); *see also* Compl. Ex. A ECF No. 1-2 at 14 ¶ 1 ("Alzal hereby transfers ownership of [the Vehicle]").)  While this allegation of performance is far from a model of clarity, all reasonable inferences must be drawn in Alzal's favor given the Corporate Defendants' default.  *See Finkel*, 577 F.3d at 84.  In this case, it is reasonable to infer that Alzal performed its obligations under the contract to transfer ownership of the Vehicle because the Corporate Defendants did not pay Alzal the agreed-upon purchase price even though they "sold" and were "paid for" the Vehicle.  In other words, as alleged: (1) the Corporate Defendants at some point obtained custody of the Vehicle, presumably from Alzal; (2) resold the Vehicle to a third party; and (3) received payment from that third party but did not share the proceeds with Alzal to satisfy the contract's payment terms.

Accordingly, the Court respectfully recommends that default judgment should be **granted** against the Corporate Defendants for the breach of contract claims alleged in Counts One and Two.

### D.    Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Bricklayers*, 779 F.3d at 189 (cleaned up).  Rather, "[t]he [C]ourt must be satisfied that [the plaintiff] has met the burden of proving damages to the [C]ourt with reasonable certainty."  *Balhetchet v. Su Caso*

*Marketing, Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (cleaned up).  Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "To evaluate the proposed damages, the court 'may rely on detailed affidavits or documentary evidence.'" *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(RER), 2023 WL 7687844, at *2 (E.D.N.Y. Oct. 10, 2023) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Plaintiff seeks compensatory and liquidated damages, interest, and attorneys' fees and costs.  (Mem, ECF No. 139 at 4–5.)

### 1. Compensatory Damages

Alzal requests $29,900 for the unpaid balance due after selling the Vehicle to the Corporate Defendants.  (Mem., ECF No. 139 at 4.)  "Under New York law, damages for breach of contract should put the plaintiff in the same economic position [it] would have occupied had the breaching party performed the contract." *LG Cap. Funding, LLC v. Solar Energy Initiatives, Inc.*, No. 19-CV-907 (NG)(RML), 2019 WL 7630792, at *3 (E.D.N.Y. Nov. 1, 2019) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)), *adopted by* 2020 WL 364078 (E.D.N.Y. Jan. 22, 2020).  As noted, the Corporate Defendants paid only $10,000 of the $39,900 purchase price stated in the contract despite Alzal's demands for payment.  (Compl. Ex. A, ECF No. 1-2 at 14 ¶ 1; Igdalev Aff., ECF No. 138 at 2 ¶¶ 8–10.) The Corporate Defendants still have not paid the balance due.  Alzal's requested damages therefore reflect the difference between the agreed-upon purchase price it would have received

if the Corporate Defendants had fulfilled their contractual obligation ($39,900) and the Corporate Defendants' sole payment ($10,000). The Court thus respectfully recommends that Alzal should be awarded **$29,900** in compensatory damages.

### 2. Liquidated Damages

Next, Alzal seeks $15,000 in liquidated damages. (Mem., ECF No. 139 at 4.) "In effect, a liquidated damages provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." *No Limit Auto Enters., Inc. v. No Limit Auto Body, Inc.*, No. 21-CV-4755 (AMD)(JMW), 2022 WL 18399477, at *11 (E.D.N.Y. Dec. 12, 2022) (quoting *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (1977)), *adopted by* 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023). "A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *Truck Rent-A-Ctr.*, 41 N.Y.2d at 425; *see also LG Cap. Funding, LLC v. M Line Holdings, Inc.*, 422 F. Supp. 3d 739, 748 (E.D.N.Y. 2018) ("'A liquidated damages clause generally will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed.'") (quoting *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 740 (2d Cir. 1989)). "The burden is on the party seeking to avoid liquidated damages . . . to show that the stated liquidated damages are, in fact, a penalty." *JMD Holding Corp. v. Cong. Fin. Corp.*, 4 N.Y.3d 373, 380 (2005).

Here, Alzal is entitled to liquidated damages for the Corporate Defendants' breach. The contract states that if Alzal did not receive the agreed purchase price within the 30-day period, "Purchaser shall be liable to Alzal for the agreed upon purchase price as well as the sum of

$15,000 as and for liquidated damages since it is not possible to determine the actual damages sustained by Alzal as the result of Purchasers' failure to perform their obligations." (Compl. Ex. A, ECF No. 1-2 at 14 ¶ 2; *see also* Igdalev Aff., ECF No. 138 at 2 ¶ 11.)  Liquidated damages of $15,000, reflecting less than 40% of the purchase price, are not plainly or grossly disproportionate to Alzal's probable loss for the Corporate Defendants' breach.  *See Great Lakes Motor Corp. v. Johnson*, 18 N.Y.S.3d 256, 257 (4th Dep't 2015) (insufficient evidence to show that $20,000 in liquidated damages is disproportionate to seller's losses for breach of contract related to sale of luxury vehicle); *see also LG Cap. Funding, LLC v. One World Holding, Inc.*, No. 15-CV-698 (SJ)(JO), 2018 WL 3135848, at *14 (E.D.N.Y. June 27, 2018) (liquidated damages of twice the default sum was not plainly or grossly disproportionate to probable loss).  Further, because the Corporate Defendants are in default, there is no evidence before the Court regarding whether Alzal's damages for the Corporate Defendants' breach would have been readily ascertainable when the contract was executed in 2013.  Indeed, by the contract's plain terms, the parties agreed that such damages could not be determined at that time.  (Igdalev Aff., ECF No. 138 at 2 ¶ 11.)

Accordingly, the Court respectfully recommends that Alzal should be awarded **$15,000** in liquidated damages.

### 3.    Set-Off

Alzal also argues that the default judgment damages award should not be reduced or "set off" based on its settlement with Motitis.  (Mem., ECF No. 139 at 5.)  The Court agrees.

"Generally, 'when a plaintiff settles with one of several joint tortfeasors, the non-settling defendants are entitled to a credit for that settlement' though nothing prohibits a plaintiff from recovering more than his actual losses." *Sirius XM Radio Inc. v. Aura*

*Multimedia Corp.*, No. 21-CV-6963 (GHW)(SDA), 2024 WL 1756854, at *8 (S.D.N.Y. Apr. 6, 2024) (citing *Johnson v. Dumphy*, No. 09-CV-2758 (ILG)(SMG), 2011 WL 6101957, at *5 (E.D.N.Y. Nov. 14, 2011), *adopted by* 2011 WL 6111236 (E.D.N.Y. Dec. 7, 2011) (which quotes *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208, 219 (1994))), *adopted by* 2024 WL 1739905 (S.D.N.Y. Apr. 23, 2024).  "A court may use its discretion in considering the circumstances and the amount of the settlement in deciding whether to apply an offset." *Sirius XM Radio*, 2024 WL 1756854, at *8.

"Courts in this District have reached different conclusions in considering whether to apply, *sua sponte*, a set-off on behalf of a defaulting defendant for amounts paid to plaintiffs by settling co-defendants," with some courts reducing "awards on default judgment by the amounts received in settlement from co-defendants with whom the defaulting defendants were jointly and severally liable." *Lelchook v. Islamic Republic of Iran*, No. 16-CV-7078 (ILG), 2020 WL 12656283, at *12 (E.D.N.Y. Nov. 23, 2020) (collecting cases), *adopted in relevant part by* 2022 WL 499901 (E.D.N.Y. Feb. 18, 2022).  "Most Courts in the Second Circuit however have held that that a defendant in default may not invoke the benefits of the set-off rule." *Allstate Ins. Co. v. Yehudian*, No. 14-CV-4826 (JS)(AKT), 2018 WL 1767873, at *19 (E.D.N.Y. Feb. 15, 2018) (cleaned up), *adopted by* 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018) (collecting cases).  "Indeed, New York courts confronted with a non-settling defendant who has defaulted have decided that the windfall should not accrue to the benefit of the party who has refused to participate in litigation." *JTH Tax LLC v. Sanchez*, No. 22-CV-6160 (AS)(JLC), 2023 WL 6813449, at *3 (S.D.N.Y. Oct. 16, 2023) (citing *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 446 (S.D.N.Y. 2009)), *adopted by* 2023 WL 8936352 (S.D.N.Y. Dec. 27, 2023).

The circumstances in this case weigh against reducing Alzal's damages award for the Corporate Defendants' default to account for Alzal's settlement with Motitis.  In addition to the breach of contract claim related to the sale of the Vehicle, Alzal also alleged unjust enrichment claims against Motitis related to the tire mounting machines and fraud claims against Motitis related to the sale of another vehicle.  (*See* Compl., ECF No. 1-2 ¶¶ 49–68.)  Alzal correctly notes that "the settlement with [Motitis] involved the settlement of additional claims not brought against [the Corporate Defendants and] did not allocate specific amounts to the various claims against Motitis, and it would be unduly complex to attempt to allocate those sums now."  (Mem., ECF No. 139 at 6.)  Further, Motitis defaulted on the settlement, leaving Alzal without the benefit of that agreement; a set-off would further reduce Alzal's recovery.  As a result, the Court respectfully recommends that Alzal's settlement with Motitis should not offset the damages award for the Corporate Defendants' default.

### 4.    Pre-judgment Interest

In a diversity case such as this one, state law governs the award of prejudgment interest. *Schipani v. McLeod*, 541 F.3d 158, 164–65 (2d Cir. 2008).  Under New York law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *Fresco, LLC v. Sunshine Fresh Foods, LLC*, No. 20-CV-8733 (JPO), 2022 WL 902669, at *2 (S.D.N.Y. Mar. 28, 2022) (citing *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) and N.Y. C.P.L.R. § 5001).  Interest "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  The applicable interest rate is 9% per year unless otherwise required by statute or the parties' agreement. *Id.* § 5004; *M Line Holdings*, 422 F. Supp. 3d at 756 ("Where the parties stipulate

to an interest rate, prejudgment interest is calculated at the contract rate, until the amount owed under the contract merges into a judgment.") (cleaned up).

While Alzal's motion does not specifically request or calculate any interest, "[t]he Court may award prejudgment interest *sua sponte*" where, as here, "the complaint contained a clear, though brief, demand for the prejudgment interest." *Cap. One, N.A. v. Auto Gallery Motors, LLC*, No. 2:16-CV-6534 (PKC)(SIL), 2020 WL 423422, at *6 (E.D.N.Y. Jan. 27, 2020) (cleaned up).  The Complaint alleges that Alzal suffered damages "plus applicable interest thereon" as a result of the Corporate Defendants' breach.  (*See* Compl., ECF No. 1-2 ¶¶ 21, 30.)  The accrual date is October 19, 2013, the first day after the end of the 30-day period within which the Corporate Defendants were required to perform under the contract.  (*See* Igdalev Decl., ECF No. 138 ¶ 11.)  And because the relevant contract is silent regarding interest, the statutory 9% annual rate governs.  *See* N.Y. C.P.L.R. § 5001(b).

Therefore, the Court respectfully recommends that pre-judgment interest should be calculated from October 19, 2013 until the date of any judgment entered in this case, at the statutory rate of 9% per year.  Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff should be awarded **$11.07** per day until the entry of judgment.[9]

### 5.    Post-judgment Interest

In contrast to pre-judgment interest, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).

---

[9] The Court calculates the daily prejudgment interest rate by multiplying the total amount of damages ($49,900) by 9%, then dividing by 365, for a daily rate of $11.07.

Accordingly, the Court respectfully recommends that Alzal should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

###     6.    Attorneys' Fees

Alzal also seeks $111,428.20 in attorneys' fees.[10]  (*See* Compl., ECF No. 1-2 ¶¶ 69–72; Supp. Mot., ECF No. 152.)  Alzal retained six firms during the litigation: Kleyman Law Group (Alex Kleyman, Esq.); Michael A. King, Esq.; Sacco & Fillas LLP  ("Sacco & Fillas") (Scott J. Laird, Esq.); Kevin Faga, Esq.; Arthur Morrison, Esq.; and Morrison Tenenbaum PLLC ("Morrison Tenenbaum") (Lawrence F. Morrison, Esq. and Joshua S. Androphy, Esq.).[11]  (*See generally* Supp. Mot., ECF No. 152; Igdalev Decl., ECF No. 138 ¶¶ 18–19.)

"[P]arties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees."  *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073 (FB)(RML), 2023 WL 1072952, at *3 (E.D.N.Y. Jan. 9, 2023) (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)), *adopted by* 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023).  "Pursuant to New York law, a contractual provision awarding reasonable attorneys' fees to the prevailing party is enforceable 'if the contractual language is sufficiently clear.'"  *MMP Cap., Inc. v. Punyakam, PLLC*, No. 20-CV-1755 (FB)(JMW), 2022 WL 1750434, at *8 (E.D.N.Y. Apr. 5, 2022) (quoting *LG Cap.*

---

[10] Initially Alzal requested $106,567.50 in attorneys' fees and costs for all counsel.  (Mem., ECF No. 139 at 5; Androphy Decl., ECF No. 137 ¶ 11; Igdalev Decl., ECF No. 138 ¶ 19.)  At the Court's request, Alzal submitted supplemental briefing that included additional records. (*See generally* Supp. Mot., ECF No. 152.)

[11] To avoid confusion, the Court will refer to Arthur Morrison and Lawrence Morrison by their first and last names.

*Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632 (AMD), 2018 WL 3202077, at *10 (E.D.N.Y. Apr. 24, 2018)), *adopted by* 2022 WL 1749825 (E.D.N.Y. May 31, 2022).  Here, the contract states, in relevant part, that "[i]f Alzal is required to commence a legal action to enforce the terms of this Agreement, Purchaser(s) agree to be responsible for Alzal's Attorney's fees and collections costs and Court costs."  (Compl. Ex. A., ECF No. 1-2 at 15 ¶ 6.)  Therefore, the unequivocal language of the parties' contract authorizes an award of attorneys' fees.

In addition, in New York, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 19-CV-2519 (PKC)(SN), 2022 WL 17834945, at *2 (S.D.N.Y. Nov. 29, 2022) (quoting *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992)), *adopted by* 2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023).  Generally, courts in the Second Circuit apply the "presumptively reasonable fee" standard or lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case.  *K2M Design, Inc. v. Schmidt*, No. 22-CV-3069 (MKV)(GS), 2023 WL 10674525, at *10 (S.D.N.Y. Nov. 30, 2023) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) and *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)), *adopted by* 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024).  "A lodestar calculated under New York law must be fair based on (1) the time, labor, and skill required to handle the case given the difficulty of the issues in dispute; (2) the attorney's experience, ability, and reputation; (3) the amount of money in dispute and the benefit received from the attorney's services; (4) fee awards in similar cases; (5) the contingency or certainty of compensation;

(6) the results obtained; and (7) the responsibility involved." *Quintanilla v. Pete's Arbor Care Servs., Inc.*, No. 19-CV-6894 (JMA)(ARL), 2024 WL 3675900, at *2 (E.D.N.Y. Aug. 6, 2024) (citing *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 251 n.8 (2d Cir. 2004), which in turn cites *In re Estate of Freeman*, 34 N.Y.2d 1, 9 (1974)). "'[T]the attorneys' fees must be supported by contemporaneous time records specifying the date, amount of hours, and nature of the work performed.'" *Punyakam*, 2022 WL 1750434, at *8 (quoting *Wowio*, 2018 WL 3202077, at *10).

### a.      Services Billed at a Flat Fee Rate

Alzal seeks a total of $72,500 billed at flat fee rates as follows: (1) $10,000 for Kleyman Law Group; (2) $15,000 billed for attorney King; (3) $1,000 for attorney Faga; and (4) $46,500 for attorney Arthur Morrison.  (Supp. Mot., ECF No. 152 at 1–2.)

"Where there is a flat fee agreement, the court must still examine whether the fee is reasonable by calculating the presumptively reasonable fee and comparing it to the flat fee amount." *CIT Bank N.A. v. Gordon*, No. 17-CV-3972 (ADS)(SIL), 2020 WL 4587446, at *5 (E.D.N.Y. May 10, 2020), *adopted by* 2020 WL 2711420 (E.D.N.Y. May 26, 2020). "[C]ourts generally will not award the flat fee 'unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done.'" *CIT Bank, N.A. v. Mitchell*, No. 17-CV-1969 (ILG)(SMG), 2021 WL 54081, at *7 (E.D.N.Y. Jan. 6, 2021) (quoting *Incredible Foods Grp., LLC v. Unifoods, S.A. de C.V.*, No. 14-CV-5207 (KAM)(JO), 2016 WL 4179943, at *6 (E.D.N.Y. Aug. 5, 2016)).  "Absent adequate records of the legal work performed, 'the court may deny fees altogether or reduce the award.'" *Id.* (quoting *Incredible Foods*, 2016 WL 4179943, at *6).

### i.    Kleyman Law Group

Alzal seeks $10,000 for services rendered by Alex Kleyman of Kleyman Law Group for "initial preparation and filing of the complaint in state court." (Supp. Mot., ECF No. 152 at 1.) But "[the Court] cannot apply any of the factors required to determine the reasonableness of the fee because [Alzal's] attorney has given [the Court] no information." *Francis v. AMCA*, No. 15-CV-3624 (BMC), 2015 WL 4662724, at *4 (E.D.N.Y. Aug. 6, 2015). According to Alzal, Mr. Kleyman was admitted to practice in New York in 2011 and is a sole practitioner. (Supp. Mot., ECF No. 152 at 1.) The only evidence to support Alzal's request is Alzal's fully executed retainer agreement with Kleyman Law Group dated June 22, 2015. (Supp. Mot. Ex. 1, ECF No. 152-1 at 2.) Besides the Complaint, there is no evidence of the services Kleyman provided, his experience with commercial litigation disputes like this one, or the number of hours expended to provide those services. For these reasons, the Court respectfully recommends that Alzal's request for attorneys' fees for Kleyman Law Group should be denied.

### ii.    Michael King

Next, Alzal requests $15,000 for attorney King's services from approximately September 2015 through June 2017. (Supp. Mot., ECF No. 152 at 1; Supp. Mot. Ex. 1, ECF No. 152-1 at 3–5.)[12] Alzal states that King was admitted to practice in 1997, is a sole practitioner, and "responded to counterclaims and handled discovery on the action, including propounding and responding to written discovery requests, document production, at least three

---

[12] The motion states that King represented Alzal starting in November 2015 (Supp. Mot., ECF No. 152 at 1), but the docket reflects that King filed a notice of appearance on Alzal's behalf on September 11, 2015 (ECF No. 7). Further, while Alzal seeks $15,000 for King's services (Supp. Mot., ECF No. 152 at 1), the retainer agreement and invoice list a flat rate of $15,500 (Supp. Mot. Ex. 1, ECF No. 152-1 at 3–5).

depositions, and addressing discovery disputes." (Supp. Mot., ECF No. 152 at 1.) Alzal submits only its fully executed retainer agreement with King, dated November 29, 2015, and copies of personal checks written to King for legal fees, to support his request. (Supp. Mot. Ex. 1, ECF No. 152-1 at 3–4.) These documents on their own are insufficient to determine a reasonable fee.

On the other hand, Alzal "should be eligible to recover limited fees for any contemporaneously documented time that [counsel] was physically before the district court" or appearing remotely. *Scott v. City of New York*, 643 F.3d 56, 59 & n.1 (2d Cir. 2011). In this regard, "entries in official court records (*e.g.* the docket, minute entries, and transcriptions of proceedings) may serve as reliable documentation of an attorney's compensable hours in court," even absent contemporaneous attorney time and billing records. *Id.* Unlike Kleyman, King appeared before the Court for several discovery and settlement conferences. (*See* ECF Nos. 11, 14, 17, 21, 24 (minute entries).) Other filings on the docket indicate that King spent out-of-court time pursuing Plaintiff's claims. (*See, e.g.*, ECF No. 18 (deficiency letter to defense counsel seeking to compel production and describing Plaintiff's timely discovery responses); ECF Nos. 22–23 (status letters reporting progress with depositions).) The Court properly considers these activities to support the requested attorneys' fees. In other words, "given the amount of work reflected in the docket and the work described in the application as having been performed, a reduced attorneys' fee award is appropriate." *Incredible Foods*, 2016 WL 4179943, at *6. The Court therefore respectfully recommends that the fees for King should be reduced by 40% and that Alzal should awarded $9,000 for King's services.

### iii.    Kevin Faga

Alzal further seeks $1,000 for hiring attorney Faga.  (Supp. Mot., ECF No. 152 at 2.)
Alzal attaches a "Retainer Letter" dated May 31, 2018, which states that Alzal agreed to pay
Faga a $10,000 retainer, and that Faga's services would be charged against the retainer at the
firm's prevailing hourly rates for attorneys and paralegals. (Supp. Mot. Ex. 1, ECF No. 152-1
at 28–30.)  Alzal admits that it paid $1,000 for Faga to review the file and potentially take on
the case, but offers no information regarding Faga's experience or work performed.  (Supp.
Mot., ECF No. 152 at 2.)  For these reasons, the Court respectfully recommends that Alzal's
request for attorneys' fees for Faga's services should be denied.

### iv.    Arthur Morrison

Alzal requests $46,500 for services of attorney Arthur Morrison between May 2018
and December 2021.  (Supp. Mot., ECF No. 152 at 2.)  Alzal notes that Arthur Morrison was
admitted to practice in the state of New York in 1964 and in federal court shortly thereafter,
and that he tried many cases in state and federal courts.  (*Id.*)  As with King, Alzal does not
submit contemporaneous time records for Arthur Morrison's work.  Instead, the documentary
evidence includes: (1) a retainer agreement dated May 22, 2018, charging a $25,000 retainer
fee for representation in this action; (2) an invoice dated February 19, 2019, charging a retainer
fee for services to investigate Sankar's bankruptcy; and (3) an engagement letter dated January
13, 2020, charging (and receiving) a flat fee of $20,000 for additional services.  (Supp. Mot.
Ex. 1, ECF No. 152-1 at 31–37.)  The Court will not award attorneys' fees based solely on
these documents.

Similar to King, however, the Court finds that a reduced attorneys' fee award is
warranted for Arthur Morrison's services reflected in the docket and filings in this case.  *Scott*,

643 F.3d at 59.  Importantly, when Arthur Morrison entered his appearance in May 2018, all Defendants proceeded *pro se*.  As a result, he appeared for many conferences before the Court to discuss settlement and discovery disputes with Sankar, Motitis, and non-party Lemon Auto Sales, Inc. ("Lemon Auto Sales") (represented by counsel).  (*See* ECF Nos. 54, 56, 69, 80–81 (minute entries); 108 & 113 (court orders resolving Alzal's discovery dispute with Lemon Auto Sales); *see also* Min. Entries dated Dec. 21, 2020; Jan. 14, 2021; & Dec. 10, 2021.)  After a settlement conference in February 2019, the Court directed Arthur Morrison to investigate Sankar's bankruptcy filing and allegedly forged documents produced in discovery.  (*See* ECF No. 69.)  And when two witnesses from Lemon Auto Sales failed to attend their depositions, counsel appeared at the courthouse on the Court's orders to conduct the depositions.  (*See* ECF No. 83 & Sept. 10, 2019 Min. Entry.)   Because the record is more fulsome for Arthur Morrison's work than for King's, the Court will reduce the award by a smaller percentage—20%—to account for the lack of contemporaneous time records.  *See Incredible Foods*, 2016 WL 4179943, at *6 (collecting cases).  Accordingly, the Court respectfully recommends that Alzal should be awarded $37,200 for Arthur Morrison's services.

### b.    Services Billed at Hourly Rates

Alzal also seeks $38,928.50 in attorneys' fees billed at hourly rates as follows: (1) $19,041 for Sacco & Fillas; and (2) $19,887.50 for its current counsel, Morrison Tenenbaum. (*See* Supp. Mot., ECF No. 152 at 1–2.)  For each firm, Alzal submits contemporaneous time records.  (Supp. Mot. Ex. 1, ECF No. 152-1 at 12–27, 38.)

"[T]he party seeking the award of fees must offer proof not only as to the customary fee charged for similar services, but also of the experience, reputation, and education of the lawyers who provided the representation." *CIT Bank, N.A. v. Ayers*, No. 15-CV-7256

(JFB)(SIL), 2017 WL 6816486, at *2–3 (E.D.N.Y. Dec. 5, 2017), *adopted by* 2018 WL 317840 (E.D.N.Y. Jan. 3, 2018). Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff. *Am. Home Energy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337 (ARR)(JAM), 2024 WL 2787064, at *19 (E.D.N.Y. May 30, 2024), *adopted by* 2024 WL 3086545 (E.D.N.Y. June 21, 2024). "Higher rates are approved where the party applying for fees supports the hourly rate with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter." *Id.*

### i.    Sacco & Fillas

Alzal seeks $19,041 for services of Sacco & Fillas between May 2017 and March 2018 based on 54.75 billed hours. (Supp. Mot., ECF No. 152 at 1.)

As a threshold matter, the Court cannot properly analyze the reasonableness of Sacco & Fillas's hourly rates because its billing statements include only the initials of persons who worked on this matter. From Alzal's supplemental brief, the Court infers that the employee identified as "SL" is attorney Scott Laird, an associate admitted in 2011 and billed at the hourly rate of $350. (Supp. Mot., ECF No. 152 at 2.) Alzal offers no further information about Laird's background or experience with litigating commercial disputes in federal court. Moreover, the requested $350 exceeds the hourly rate awarded in this district for associates with comparable years of practice. Therefore, the Court instead finds that an hourly rate of $300 for Laird is reasonable. As for the remaining unidentified persons, Alzal does not attempt to justify their hourly rates, which range from $105 to $450 per hour. (Supp. Mot. Ex. 1, ECF

No. 152-1 at 15–25.) Thus, the Court does not consider them in its calculation of attorneys' fees for Sacco & Fillas.

Despite this, the Court still finds that the number of hours Sacco & Fillas billed in this matter (after disregarding the hours for the unidentified employees) is reasonable. The billing statements reflect that Laird expended approximately 51.45 hours, which is appropriate for this case in which defense counsel withdrew, defendants failed to obtain new counsel, and Laird attended court conferences and responded to discovery demands. (*See* ECF No. 33 (order granting defense counsel motion to withdraw); Supp. Mot. Ex. 1, ECF No. 152-1 at 12–27.)

Accordingly, the Court respectfully recommends an award of $15,435 in attorneys' fees for the work performed by Sacco & Fillas.[13]

### ii.    Morrison Tenenbaum

Finally, Alzal seeks $19,887.50 for Morrison Tenenbaum's services from January 2022 to the present for 44.6 hours, including: (1) 1.6 hours for law clerks at the hourly rate of $200; (2) 41.5 hours for Androphy at the hourly rate of $450; and (3) 1.5 hours for Lawrence Morrison at the hourly rate of $595 per hour. (Supp. Mot., ECF No. 152 at 2; Supp. Mot. Ex. 2, ECF No. 152-2.)

The Court finds that the requested hourly rates are not reasonable given the record. *First*, an hourly rate of $200 for law clerks exceeds the prevailing hourly rate of $70 to 100 for legal support staff and, absent further justification, the Court recommends a reduced rate of $70 per hour. *Quintanilla*, 2024 WL 3675900, at *6 ("In this District, law clerks are typically

---

[13] The attorneys' fees are calculated as: $300 x 51.45 hours = $15,435.

awarded fees at the same hourly rate as legal paraprofessionals, or paralegals."). *Second*, Androphy seeks an hourly rate of $450 because he was admitted to practice in 2006 and has litigated hundreds of actions in state and federal court, including 20 trials. (Supp. Mot., ECF No. 152 at 2.) While Androphy's requested rate also exceeds the prevailing rate of $200 to $325 for comparable senior associates, courts have awarded him $350 given his level of experience. *See, e.g.*, *Vazquez v. Bkuk 10 Corp.*, No. 19-CV-3919 (AT)(JLC), 2022 WL 17728033, at *11 (S.D.N.Y. Dec. 16, 2022), *adopted sub nom. by Reyes v. Bkuk 10 Corp.*, No. 19-CV-3919 (AT)(JLC), 2024 WL 779385 (S.D.N.Y. Feb. 26, 2024); *Victor v. Sam's Deli Grocery Corp.*, No. 19-CV-2965 (SLC), 2022 WL 3656312, at *15 (S.D.N.Y. Aug. 25, 2022). After carefully reviewing the record, the Court finds that an appropriate hourly rate for Androphy is $375 because his work has yielded the most successful results for Alzal, including a settlement, judgment on breach of same, and the instant anticipated default judgment (assuming adoption of this Amended Report and Recommendation). *Third*, Lawrence Morrison requests $595 because he is the managing partner at the firm and was admitted to practice in 1998. (Supp. Mot., ECF No. 152 at 2.) Instead, the Court recommends a reduced hourly rate of $450 because Alzal does not offer any evidence of Lawrence Morrison's specialized experience to justify the higher hourly rate.

That said, the Court finds that the number of hours expended in this case by Morrison Tenenbaum is reasonable. Lawrence Morrison efforts ensured that the firm would represent Alzal after the death of his father, Arthur Morrison. (*See* ECF Nos. 121 & 123 (L. Morrison letters); *see also* Supp. Mot. Ex. 2, ECF No. 152-2 at 1 (L. Morrison time entries).) Androphy's billed approximately 41.5 hours to pursue remedies against all Defendants, including depositions, settlement negotiations, enforcement motions, and the instant motion.

(Supp. Mot. Ex. 2, ECF No. 152-2.)  The law clerks billed approximately 1.6 hours for reasonable clerical work.  (*Id.*)

Accordingly, the Court respectfully recommends that Alzal should be awarded $16,349.50 in attorneys' fees for Morrison Tenenbaum's work.[14]

For the foregoing reasons, the Court respectfully recommends a total attorneys' fees award of **$77,984.50**.[15]

### 7.    Costs

Finally, Alzal requests $3,219.70 in total costs, specifically: (1) $2,364.30 for King; (2) $53 for Sacco & Fillas; and (3) $802.40 for Morrison Tenenbaum.  (Supp. Mot., ECF No. 152 at 2; Supp. Mot. Ex. 1, ECF No. 152-1 at 14, 16, 24–25).)

"An award of costs 'normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  *Quintanilla*, 2024 WL 3675900, at *3 (quoting *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)). "For example, fees incurred for court filing, process servers, printing, photocopying, messenger services, postage, telephone services, transcripts, transportation, meals, subpoenas, witness fees, deposition services, and transcripts are recoverable."  *Id.*  Parties must provide "adequate" documentation to support an award of reasonable costs.  *Precise Leads, Inc. v. Nat'l Brokers of Am., Inc.*, No. 18-CIV-8661 (RA)(SLC), 2020 WL 736918, at *8 (S.D.N.Y.

---

[14] The attorneys' fees are calculated as: ($70 x 1.6 hours) (law clerks) + ($375 x 41.5 hours) (Androphy) + ($450 x 1.5 hours) (Lawrence Morrison) = $16,349.50.

[15] The total attorneys' fees are calculated as: $9,000 (King) + $37,200 (Arthur Morrison) + $15,435 (Sacco & Fillas) + $16,349.50 (Morrison & Tenenbaum) = $77,984.50.

Jan. 21, 2020), *adopted in relevant part as modified by* 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020).

*First*, after carefully reviewing the invoices for King's costs, the Court declines to award the full amount of $2,364.30.  Specifically, the Court cannot award $603 for a "Summons and Complaint," filing fee, and service of process in New York Civil Court, as indicated in an invoice dated May 24, 2016 (Supp. Mot. Ex. 1, ECF No. 152-1 at 6), when Alzal's initial complaint was filed in New York Supreme Court, Kings County and removed to this district in 2015.  Alzal presents no evidence that these costs have any relation to Alzal's prosecution of the instant case.  Similarly, the Court declines to award $469.50 in court reporter fees because the associated invoice was billed to defense counsel, not King. (*Compare* Supp. Mot. Ex. 1, ECF No. 152-1 at 7 (Oct. 2016 invoice billed to King for $759.25), *with id.* at 8 (Oct. 2016 invoice billed to defense counsel for $469.50).)  Otherwise, the Court finds that King's remaining costs of $1,291.80 are fair, reasonable, and supported by adequate documentation.  *Precise Leads*, 2020 WL 736918, at *8.  *Second*, Alzal properly documents the final two cost requests ($53 and $802.40) for travel expenses and deposition fees for Sacco & Fillas and Morrison Tennenbaum, respectively.  (Supp. Mot. Ex. 1, ECF No. 152-1 at 16, 24–25, 38).

Accordingly, the Court respectfully recommends that Alzal should be awarded **$2,147.20** in costs.[16]

---

[16] The total costs are calculated as: $1,291.80 (King) + $53 (Sacco & Fillas) + $802.40 (Morrison Tenenbaum) = $2,147.20.

III.    **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Alzal Corporation's motion for default judgment at ECF No. 136 should be **granted in part**.  Specifically: (1) default judgment should be entered against Killer Carz LLC and Killer Carz 2 LLC for breach of contract as alleged in Counts One and Two and for attorneys' fees as alleged in Count Nine of the Complaint; (2) Alzal Corporation should be awarded total damages of **$125,031.70**, including: (a) $29,900 for compensatory damages, (b) $15,000 for liquidated damages, (c) $77,984.50 in attorneys' fees, (d) $2,147.20 in costs, (e) pre-judgment interest calculated from October 19, 2013 until the date of any judgment entered in this case, at the statutory rate of 9% per year or $11.07 per day, and (f) post-judgment interest as set forth in 28 U.S.C. § 1961(a); and (3) default judgment should be **denied** as to all claims against Michael Sankar.  Further, the Court also recommends that within seven days of the adoption of this Amended Report and Recommendation, if any, Alzal Corporation should file a proposed default judgment consistent with the approved damages award.

A copy of this Amended Report and Recommendation is being served on Plaintiff Alzal Corporation via ECF.  The Clerk of Court is respectfully directed to serve a copy of this Amended Report and Recommendation on Defendants at the following addresses forthwith: (1) Killer Carz LLC c/o Lambros Motitis, 300 Winston Drive, Apartment 921, Cliffside Park, NJ 07010; (2) Killer Carz LLC, c/o Sam Sankar, 70 Kiwanis Drive, Wayne, NJ 07470; (3) Killer Carz LLC c/o Michael Sankar, 642 Highgate Park Boulevard, Davenport, FL 33897; (4) Killer Carz 2 LLC c/o Lambros Motitis, 300 Winston Drive, Apartment 921, Cliffside Park, NJ 07010; (5) Killer Carz 2 LLC c/o Sam Sankar, 70 Kiwanis Drive, Wayne, NJ 07470; (6) Killer Carz 2 LLC c/o Michael Sankar, 642 Highgate Park Boulevard, Davenport, FL

33897; and (7) Michael Sankar, 642 Highgate Park Boulevard, Davenport, FL 33897. By **August 20, 2024**, Alzal Corporation's counsel shall serve a copy of this Amended Report and Recommendation by email on Killer Carz LLC and Killer Carz 2 LLC using the email addresses listed in the Certificate of Service at ECF No. 154 and shall file a certificate of service regarding same.

      Within 14 days of service, any party may serve and file specific written objections to this Amended Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Kovner. If a party fails to object timely to this Amended Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
August 19, 2024

                          /s/Marcia M. Henry
                          MARCIA M. HENRY
                          United States Magistrate Judge